**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**


MICHELLE TUCKER,                              :

                                                   Case No. 3:06-cv-403

                Plaintiff,

                                                   District Judge Walter Herbert Rice
                                                   Chief Magistrate Judge Michael R. Merz

   -vs-

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY[1],
                Defendant.                :


**REPORT AND RECOMMENDATIONS**


       Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

       Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

---

[1] The Court notes that on February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. See, http://www.ssa.gov/pressoffice/pr/astrue-pr.htm. In accordance with Fed.R.Civ.P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as Defendant in this action. However, in accordance with the practice of this Court, the caption remains the same.

389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act.  42 U.S.C. §1381a.  With respect to the present case, eligibility is dependent upon disability, income, and other financial resources.  42 U.S.C. §1382(a).  To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §1382c(a)(A).  A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work

which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on August 26, 2003, alleging disability from November 1, 1999, due to mental impairments. (Tr. 47-49; 62-63). Plaintiff's application was denied initially and on reconsideration. (Tr. 29-32; 34-37). A hearing was held before Administrative Law Judge George Spidel, (Tr. 473-510), who determined that Plaintiff is not disabled. (Tr. 473-510). The Appeals Council denied Plaintiff's request for review, (Tr. 9-10), and

3

Judge Spidel's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Spidel found that she has severe bipolar disorder, major depression, post traumatic stress disorder, borderline intellectual functioning, and the residuals of polysubstance abuse in remission, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 20, finding 2). Judge Spidel also found that Plaintiff has the residual functional capacity to perform the basic exertional requirements of work, but that her impairments result in an inability to perform complex tasks, decreased attention and concentration, reduced stress tolerance, and diminished interpersonal skills. *Id.*, finding 3. Judge Spidel found further that Plaintiff is limited to entry-level, unskilled, simple, repetitive tasks which would not involve strict time or production standards, close interaction with others, or reading. *Id.* Judge Spidel then found that Plaintiff's residual functional capacity to perform a full range of heavy work is reduced by the limitations he identified. (Tr. 21, finding 6). Judge Spidel then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.*, findings 10, 11. Judge Spidel concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 22).

In her Statement of Errors, Plaintiff does not challenge the Commissioner's finding that she is capable of performing work at all exertional levels or the Commissioner's findings with respect to her mental residual functional capacity. (Doc. 9). Plaintiff's only challenges to the Commissioner's decision is that the Commissioner erred by failing to find that she meets Listing 12.05C. *Id.*

In determining that Plaintiff does not satisfy the Listings, Judge Spidel noted that

4

none of the mental health experts have diagnosed Plaintiff with mental retardation. (Tr. 15-16). In addition, Judge Spidel discussed Plaintiff's functional abilities and noted that Plaintiff engages in a wide range of activities. (Tr. 16-19).

In view of Plaintiff's narrow challenge to the Commissioner's decision, this Court will focus its review of the evidence on Plaintiff's alleged mental retardation.

The record contains a copy of Plaintiff's school record dated February 24, 1982. (Tr. 107-11). That record indicates that Plaintiff was age 13 years 2 months, was in grade 7, and that the results of her WISC-R for verbal, performance, and full scale IQS were Stanine 1 indicating that Plaintiff was functioning below the average range of intelligence. *Id.* That record also indicates that Plaintiff had a reading level of grade 2.5, that she was experiencing frustration in every academic area, and that her retention and grasp of essential information seemed to be quite limited. *Id.* It was recommended that Plaintiff be placed in the Developmentally Disabilities Class in junior high school. *Id.*

A school record dated February 24, 1982, indicates that Plaintiff was 16 years and 2 months of age, was in the 12th grade, and again exhibited IQ scores at Stanine 1. (Tr. 105-06). It was also noted that Plaintiff had shown growth in the academic areas of reading, spelling, and math, and it was recommended that she should be allowed to assume more responsibility for where, when, and how she traveled. *Id.*

Plaintiff has a history of mental health treatment. *See, e.g.,* Tr. 182-88; 189-94; 218-41. None of Plaintiff's treating mental health care providers identified mental retardation as one of Plaintiff's diagnoses. *See, Id.*

On December 10, 2002, Plaintiff was evaluated by psychiatrist Dr. Paska who

5

reported that Plaintiff was able to concentrate and maintain attention, that her memory and recall were intact, her judgment and insight were both intact, and that she was functioning at the level of average intelligence. (Tr. 191-93).

On November 12, 2003, examining psychologist Dr. Stoeckel reported that Plaintiff alleged she was unable to work due to poor concentration, depression, and bipolar disorder, that she graduated from high school and was in special education classes because she could not concentrate due to emotional problems at home, that she received a certificate as a nurse's aid at the Southern Ohio College, and that she was willing to pursue further education or training if offered. (Tr. 195-201). Dr. Stoeckel also reported that Plaintiff was currently receiving mental health treatment, that her grammar, articulation, and vocabulary were in the borderline range, that intellectually she appeared to be functioning in the low average to borderline range, that her verbal IQ was 66, her performance IQ was 67, and her full scale IQ was 64, which placed her in the mildly mentally retarded range, and that her performance was similar to her performance on the WISC-R done on February 24, 1982, where she scored in the 1st stanine [*see* Tr. 105-11]. *Id.* Dr. Stoeckel noted that while Plaintiff's test scores indicated mild mental retardation, she lived independently, graduated from high school, and utilized community services, indicating that her adaptive abilities were not significantly delayed. *Id.* Dr. Stoeckel opined that Plaintiff's diagnoses included borderline intellectual functioning. *Id.*

Reviewing psychologist Dr. Williams reported on November 28, 2003, that while Plaintiff's IQ scores fell in the mild mental retardation range, she had higher adaptive abilities. (Tr. 217). On March 10, 2004, reviewing psychologist Dr. Flynn reported that she agreed with Dr. Williams' report. *Id.*

6

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

> Listing 12.05 reads in part:
>
> *Mental Retardation and Autism:* Mental retardation refers to a significantly sub average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)....
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
> ...

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05.

The regulations clarify that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria...." *Foster v. Halter,* 279 F.3d 348 (6th Cir. 2001) (citations omitted)(emphasis in original).

First, the Court notes that none of the mental health experts of record, including

7

Plaintiff's treating sources, diagnosed Plaintiff with mental retardation.  Indeed, the only mental health expert who tested and considered Plaintiff's IQ scores, Dr. Stoeckel, opined that her diagnosis was, *inter alia,* borderline intellectual functioning and not mental retardation.  Further, Dr. Stoeckel specifically noted that while Plaintiff's test scores indicated mild mental retardation, she lived independently, graduated from high school, and utilized community services, indicating that her adaptive abilities were not significantly delayed.  Additionally, the reviewing mental health experts also specifically rejected a diagnosis of mental retardation noting that  while Plaintiff's IQ scores fell in the mild mental retardation range, she had higher adaptive abilities.  Plaintiff has  failed to establish that she satisfies the diagnostic description in the introductory paragraph of Listing 12.05C.  In addition, Plaintiff has not demonstrated significant deficits in adaptive behavior that meet the criteria for mental retardation. *See, Newland v. Apfel,* Case No. 97-4339, 1999 WL 435153 (6th Cir. June 17, 1999); *Burrell v. Commissioner of Social Security,* Case No. 99-4070, 2000 WL 1827799 (6th Cir. Dec.  8, 2000).

Under these facts, the Commissioner did not err by failing to find that Plaintiff satisfies Listing 12.05C.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982).  The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision

8

in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

August 29, 2007.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), ©), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).